NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4025
_____

ANDREJ SINKEVIC,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent


_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. BIA-1:A200-687-867)
Immigration Judge:  Steven A. Morley

_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2015

BEFORE:  FUENTES, GREENAWAY, JR., and NYGAARD, *Circuit Judges*

(Filed: June 26, 2015)
_____

OPINION[*]
_____


NYGAARD, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Andrej Sinkevic petitions this court to review the Board of Immigration Appeals'

(BIA), dismissal of his appeal, which challenged the Immigration Judge's denial of his

application for asylum. We will deny the petition.

This opinion does not have any precedential value. Therefore, our discussion of

the case is limited to covering only what is necessary to explain our decision to the

parties.[1] Sinkevic entered the United States in January 2003 with a falsified passport and

visa. The Government served him with a Notice to Appear in 2011, charging him with

removability. Sinkevic conceded removability, but sought asylum, withholding of

removal and relief under the regulations implementing the Convention Against Torture (8

C.F.R. § 208.16-208.18).[2]

Sinkevic explained that, just prior to his entry into the United States in 2003, the

Lithuanian government arrested an uncle—also of Polish ethnicity—for smuggling liquor

into the country. Although he provided scant details of the incident, Sinkevic implies that

his uncle's arrest was part of a decades-long campaign by the government to intimidate

citizens of Polish origin. On several occasions after Sinkevic's departure from Lithuania

up through 2006, officials from the Lithuanian government questioned his parents about

---

[1]We review the legal determinations of the Board of Immigration Appeals de novo. *Gomez-Zuluaga v. Attorney General of the United States¸*527 F.3d 330, 339 (3d Cir. 2008). We review factual findings for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

[2]Sinkevic does not challenge the denial of his withholding of removal and CAT relief claims. The Board notes without comment the Immigration Judge's ruling that Sinkevic met his burden of demonstrating a change in circumstances sufficient to be exempted from the one-year filing deadline.

their son's whereabouts. In 2011, agents from the FBI called upon Sinkevic and asked him about his involvement in his uncle's smuggling incident. Sinkevic maintains that he was only vaguely aware of his uncle's activities before leaving and was not involved. His explanation for the FBI visit is that the Lithuanian government is using his uncle's incident to unjustly target him as part of a larger practice of persecuting Lithuanians of Polish descent. He contends that, if returned to the country, he would be subjected to persecution consisting of imprisonment for a lengthy period of time and possibly physical abuse. He also maintains that, outside of this, he would be treated as a second-class citizen.

He proffered an expert witness who testified only to a general animus that the Lithuanian government has towards its citizens of Polish descent, based upon a troubled history between the Poles and Lithuanians. A Country Report also suggests that ethnic tensions exist, and it notes that isolated incidents of discriminatory and possibly abusive treatment of ethnic Poles have occurred.

The BIA dismissed Sinkevic's appeal on the basis that Sinkevic relied solely on speculation to assert both that he was being unfairly targeted by the Lithuanian government—with the cooperation of the FBI—and that he would be treated harshly because of his Polish ethnicity if he returned. We conclude that substantial evidence supports the Board's decision.

Sinkevic had the burden to prove an "objectively reasonable well-founded fear of future persecution." *Huang v. Attorney General of the United States,* 620 F.3d 372, 381 (3d Cir. 2010). We understand how one might question why the Lithuanian government

3

would ask the FBI to investigate Sinkevic's involvement in a seemingly minor, eight-year old incident of liquor smuggling. However, this unanswered question is not enough in and of itself to sustain his application for asylum. Objectively, we know only (based upon Sinkevic's account) that his uncle was arrested in 2002, convicted in 2004, and fined and released after his conviction. None of this, without more, rises to the level of persecution.

Adding to the uncertainty, Sinkevic supposes, but does not know, that his uncle may have implicated him in the 2002 crime. Moreover, he gives no reason for the Lithuanian government's repeated questioning of his parents up through 2006. Sinkevic maintains that his questioning by the FBI in 2011 shows that ethnic persecution is at the root of the Lithuanian government's interest in him. But, we can arrive at such a conclusion only by taking a very large speculative leap, because the record Sinkevic created is, at best, vague with many evidentiary gaps. Although the Country Report and an expert witness indicate that ethnic tensions exist to varying degrees between Lithuanians and Poles, we have no objective means of connecting any of this to anything that has happened or that may happen to Sinkevic or his family. It is also unclear whether any of it would rise to the level of persecution. The record does not ground a ruling that Sinkevic's fear of persecution is either objectively based or reasonable. Therefore, we conclude that the Board's decision applied the law appropriately and its decision is well-supported by record.

For all of these reasons, we will deny the petition for review.

4